UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SENTINEL INSURANCE
 COMPANY, LTD.

      Plaintiff

-vs-

MICHIGAN AUTO LAW, P.C.
STEVEN M. GURSTEN

      Defendants

Case No. 25-cv-_____

Hon. _____

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Sentinel Insurance Company, Ltd. (Sentinel), by its attorneys, William S. Cook of Wilson Elser Moskowitz Edelman & Dicker LLP, brings this Complaint for Declaratory Judgment against defendants Michigan Auto Law, P.C. (Michigan Auto Law) and Steven M. Gursten (Gursten) (collectively, Defendants) and states as follows:

1

## STATEMENT OF CASE

1.     This action seeks a declaration that Sentinel owes no insurance coverage obligations to Defendants in connection with a lawsuit styled *Citizens United Reciprocal Exchange v. Steven M. Gursten et al.*, Case No. 24-cv-13008, pending in the United States District Court for the Eastern District of Michigan (Underlying Action).

2.     A copy of the original complaint filed in the Underlying Action is attached as Exhibit A, and the current operative complaint, the first amended complaint, is attached as Exhibit B.

## THE PARTIES

3.     Sentinel is an insurance company incorporated under the laws of the State of Connecticut with its principal place of business in Connecticut.

4.     Michigan Auto Law is a Michigan professional corporation with its principal place of business in Michigan.

5.     Gursten is a Michigan resident and citizen.

## JURISDICTION AND VENUE

6.     Sentinel brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 2201.

2

7.     Venue is proper in this court pursuant to 28 U.S.C. § 1391 because Defendants conduct business in this District, a substantial part of the events giving rise to this claim occurred in this District, and the Underlying Action is pending in this District.

## FACTS

**A.     The Underlying Action**

8.     On November 13, 2024, Citizens United Reciprocal Exchange, an insurance company commonly known as CURE that issues automobile liability policies to Michigan residents, filed a lawsuit against Michigan Auto Law, Gursten, and others alleging that Gursten, a plaintiff's personal injury lawyer who litigates cases involving injuries stemming from automobile accidents, waged a campaign to attack, malign, and defame CURE. (Ex. A—Complaint)

9.     According to CURE's complaint, Gursten published a blog post criticizing CURE and eventually created a website devoted to attacking CURE. (Ex. A—Complaint)

10.    The blog post and website, CURE claims, include numerous false, defamatory, and misleading statements about CURE. (Ex. A—Complaint)

3

11.     CURE further alleges that Gursten purchased billboards in the metro Detroit area that infringed on CURE's trademarks and included false and defamatory statements about CURE. (Ex. A—Complaint)

12.     CURE's original complaint includes seven counts—false advertising under the Lanham Act, 15 U.S.C. § 1125(a) (Count I); common law defamation (Count II); statutory defamation under MCL 600.2911 (Count III); trademark infringement under the Lanham Act, 15 U.S.C. § 1114 (Count IV); a violation of the Michigan Trademark Act, MCL 429.42 (Count V); common law trademark infringement (Count VI); and tortious interference (Count VII). (Ex. A—Complaint)

13.     CURE, with the court's permission, filed a First Amended Complaint, which is the operative pleading in CURE's lawsuit against Michigan Auto Law and Gursten. (Ex. B—First Amended Complaint)

14.     CURE's First Amended Complaint includes the same seven counts found in its original complaint. (Ex. B—First Amended Complaint, ¶ 160-222)

15.     In the First Amended Complaint, CURE seeks a variety of damages, including compensatory damages, actual damages, exemplary damages, punitive damages, attorneys' fees and costs, pre- and post-

4

judgment interest, and a preliminary injunction. (Ex. B—First Amended Complaint, pg. 43-44)

**B.    The Policies**

16.    As described in  the table below, Sentinel issued two insurance policies, referred to as a Business Owner's Policy (collectively, Policies), to Michigan Auto Law. True and correct copies of the Policies are attached, respectively, as Exhibits C and D:

| <u>Insured</u> | <u>Policy No.</u> | <u>Inception</u> | <u>Expiration</u> | <u>Exhibit</u> |
|---|---|---|---|---|
| Michigan Auto Law | 35 SBA PP9485 | 6/1/23 | 6/1/24 | **C** |
| Michigan Auto Law | 35 SBA PP9485 | 6/1/24 | 6/1/25 | **D** |

17.    Subject to their terms and conditions, the Policies provide certain Business Liability insurance coverage. (Ex. C; Ex. D)

**C.    Business Liability Coverage**

18.    The Business Liability Coverage Part of the Policies, Form SS 00 08 04 05, states in part:

**A.    COVERAGES**

**1.    BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**

5

**Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

* * *

b. This insurance applies:

 (1) To "bodily injury" and "property damage" only if:

  **(a)** The "bodily injury or "property damage is caused by an "occurrence" that takes place in the "coverage territory";

  (b) The "bodily injury" or "property damage" occurs during the policy period; and

* * *

 (2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was

6

committed in the "coverage territory"
during the policy period.

(Ex. C, pg. 64; Ex. D, pg. 64)

19.     Section G, titled Liability and Medical Expenses Definitions,

defines certain words or phrases used in the policy, including:

1.     "Advertisement" means the widespread public
dissemination of information or images that has the
purpose of inducing the sale of goods, products or
services through:

a.     (1) Radio;

(2) Television;

(3) Billboard;

(4) Magazine;

(5) Newspaper;

b.     The Internet, but only that part of a web site
that is about goods, products or services for
the purposes of including the sale of goods,
products or services; or

c.     Any other publication that is given
widespread public distribution.

However, "advertisement" does not include:

a.     The design, printed material, information or
images contained in, on or upon the
packaging or labeling of any goods or
products; or

7

b.     An interactive conversation between or among persons through a computer network.

**2.**     "Advertising idea" means any idea for an "advertisement".

*     *     *

**5.**     "Bodily injury" means physical:

a.     Injury;

b.     Sickness; or

c.     Disease

sustained by a person and, if arising out of the above, mental anguish or death at any time.

*     *     *

9.     "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing documents.

*     *     *

16.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17.     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.     False arrest, detention or imprisonment;

8

b.  Malicious prosecution;

c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or organization occupies, committed by or on behalf of its owner, landlord or lessor;

d.  Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.  Oral, written or electronic publication of material that violates a person's right of privacy;

f.  Copying, in your "advertisement" or on "your web site", a person's or organization's "advertising idea" or style of "advertisement";

g.  Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"; or

h.  [*deleted by SS 00 60 09 15*]

(Ex. C, pg. 83-87; Ex. D, pg. 83-87)

20.  The Business Liability Coverage Part also contains the following exclusions:

**B.  EXCLUSIONS**

**1.  Applicable To Business Liability Coverage**

9

This insurance does not apply to:

**a.**   **Expected Or Intended Injury**

   **(1)**   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property; or

   **(2)**   "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

*      *      *

**j.**   **Professional Services**

   "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional service. This includes but is not limited to:

   (1)   Legal, accounting or advertising services;

*      *      *

**p.**   **Personal And Advertising Injury**

10

"Personal and advertising injury":

**(1)**   Arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(2)**   Arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period;

*     *     *

**(7)[1]** **(a)**   Arising out of any actual or alleged infringement or violation of any intellectual property rights, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity; or

**(b)**   Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made by you or by any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

---

[1] This part of the exclusion – subsection p.(7) – is modified by the Business Liability Coverage Form Amendatory Endorsement (Form SS 00 60 09 15). The language quoted in the complaint is the amended language from this endorsement. (Ex. C, pg. 88; Ex. D, pg. 88)

However, this exclusion does not apply if the only allegation in the claim or "suit" involved any intellectual property right is limited to:

**(1)** Infringement, in your "advertisement", of:

    (a)    Copyright;

    (b)    Slogan; or

    (c)    Title of any literary or artistic work.

**(2)** Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement".

         *    *    *

**(10)** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers;

(Ex. C, pg. 66, 69, 71; Ex. D, pg. 66, 69, 71)

21.    The Business Liability Coverage Part defines who qualifies as an insured entitled to coverage under the policy, and that section includes the following language:

**C.**    **WHO IS AN INSURED**

1.    If you are designated in the Declarations as:

         *    *    *

12

        **d.**     An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

(Ex. C, pg. 73; Ex. D, pg. 73)

## D.    Tender and actual controversy

22.    Defendants tendered the Underlying Action to Sentinel requesting coverage for the Underlying Action.

23.    Sentinel denies that it owes Defendants any defense or indemnity obligation under the Policies.

24.    An actual and justiciable controversy exists between Sentinel and Defendants, and by the terms and provisions of Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liability of the parties and to grant such relief as it deems necessary and proper.

13

## COUNT I

### Insuring Agreements

25.     Sentinel incorporates and restates the allegations of paragraphs 1 through 24 above for this paragraph.

26.     Subject to their terms, the Policies provide coverage for claims for damages because of "bodily injury" or "property damage" caused by an "occurrence" that occurred within the policy period or because of "personal and advertising injury" as those terms are defined and used in the Policies.

27.     The Underlying Action does not allege damages because of physical injury, sickness, or disease sustained by a person caused by an accident, nor does it allege physical injury to or loss of use of tangible property caused by an accident. The Underlying Action, thus, does not allege a claim for "bodily injury" or "property damage".

28.     The Underlying Action, moreover, does not allege a claim for damages because of "bodily injury" or "property damage" caused by an "occurrence," and there is also no coverage to the extent that any of the alleged acts in the Underlying Action did not occur within the policy period.

14

29.    Additionally, the Policies only provide coverage to the extent that a claim alleges a "personal and advertising injury" "caused by an offense arising out of your business" and that occurred during the policy period.

30.    To the extent the Underlying Action does not allege a "personal and advertising injury" "caused by an offense arising out of your business" or within the policy periods, there is no coverage.

31.    Thus, Sentinel owes no defense or indemnity obligations to Defendants for any such claims against them in the Underlying Action.

## COUNT II

### Expected or Intended Exclusion Bars Coverage

32.    Sentinel incorporates and restates the allegations of paragraphs 1 through 31 above for this paragraph.

33.    The Expected or Intended Exclusions in the Policies bar coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

34.    The Expected or Intended Exclusion in the Policies also bars coverage for "personal and advertising injury" "arising out of an offense committed by, at the direction of or with the consent or acquiescence of the

15

insured with the expectation of inflicting 'personal and advertising injury'."

35.    The Underlying Action alleges that Defendants intentionally engaged in false and misleading misconduct.

36.    To the extent any "bodily injury", "property damage", or "personal and advertising injury" is alleged in the Underlying Action, which Sentinel denies, the Expected or Intended Exclusions bars coverage under the Policies.

37.    Thus, Sentinel owes no defense or indemnity obligations to Defendants for any claims against them in the Underlying Action.

## COUNT III

**Professional Services Exclusions and Lawyers
Professional Liability Endorsement Exclusion Bars Coverage**

38.    Sentinel incorporates and restates the allegations of paragraphs 1 through 37 above for this paragraph.

39.    The Professional Services exclusion—also known as Exclusion j.—bars coverage for "bodily injury", "property damage", and "personal and advertising injury" "arising out of the rendering of or failure to render

16

any professional service. This includes but is not limited to: (1) Legal, accounting or advertising services . . . ."

40.     Similarly, the Lawyers Professional Liability exclusion, which is part of an endorsement to the policy, eliminates coverage for "bodily injury", "property damage", or "personal and advertising injury" "arising out of the rendering or of failure to render professional legal services by a lawyer or by any other person performing such legal services."

41.     The Underlying Action alleges Defendants are a law firm and a lawyer working for the law firm and engaged in the misconduct alleged in the Underlying Action to further their professional legal business interests.

42.     To the extent the Underlying Action alleges "bodily injury," "property damage," or "personal and advertising injury" as defined by the Policies, which Sentinel denies, the Professional Services exclusions and the Professional Liability Endorsement Exclusions bar coverage under the Policies for the Underlying Action.

43.     Thus, Sentinel owes no defense or indemnity obligations to Defendants for any claims against them in the Underlying Action.

## COUNT IV

**Exclusion p. (1) (Knowledge of Falsity Exclusions) Bars Coverage**

44.     Sentinel incorporates and restates the allegations of paragraphs 1 through 43 above for this paragraph.

45.     Exclusion p.(1), the Knowledge of Falsity Exclusion, bars coverage for "personal and advertising injury" arising out of oral, written, or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

46.     CURE alleges Defendants unlawfully and falsely publicized information about CURE and its business practices, including making false statements in advertising that misrepresents CURE's business practices.

47.     To the extent the Underlying Action alleges "personal and advertising injury" as defined by the Policies, which Sentinel denies, Exclusions p.(1), the Knowledge of Falsity Exclusion, bars coverage under the Policies for the Underlying Action.

48.     Thus, Sentinel owes no defense or indemnity obligations to Defendants for any claims against them in the Underlying Action.

320645250v.1
320645250v.1

## COUNT V

### Exclusions p. (2) Bars Coverage

49.    Sentinel incorporates and restates the allegations of paragraphs 1 through 48 above for this paragraph.

50.    Exclusion p.(2) bars coverage for "personal and advertising injury" "[a]rising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period."

51.    The Underlying Action alleges actions that occurred outside of one or more of the policy periods for the Policies.

52.    To the extent the Underlying Action alleges "personal and advertising injury" as defined by the Policies, which Sentinel denies, Exclusions p.(2) bar coverage under the Policies for the Underlying Action.

53.    Thus, Sentinel owes no defense or indemnity obligations to Defendants for any claims against them in the Underlying Action.

## COUNT VI

### Exclusion p. (7) - Intellectual Property Exclusions Bars Coverage

54.    Sentinel incorporates and restates the allegations of paragraphs 1 through 53 above for this paragraph.

320645250v.1
320645250v.1

55.    The Intellectual Property Exclusions in the Policies bar coverage for "personal and advertising injury . . . arising out of any actual or alleged infringement or violation of any intellectual property right, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity."

56.    Moreover, the Intellectual Property Exclusions bar coverage for "any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made by you or by any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply."

57.    In the Underlying Action, CURE is pursuing claims under the Lanham Act, related state laws, and the common law arising out of CURE's rights in its trademarks.

58.    CURE also seeks to enjoin and restrain Defendants from, among other things, using their trademarks.

59.    The Intellectual Property Exclusions apply to preclude coverage under the Policies for the Underlying Action.

60.    Thus, Sentinel owes no defense or indemnity obligations to Defendants for any claims against them in the Underlying Action.

## COUNT VII

### Exclusion p. (10) Bars Coverage

61.     Sentinel incorporates and restates the allegations of paragraphs 1 through 61 above for this paragraph.

62.     Exclusion p.(10) bars coverage for "personal and advertising injury" "[a]rising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers."

63.     The Underlying Action alleges Defendants created a website whenCUREwontpay.com that incorporates and uses CURE's name.

64.      To the extent the Underlying Action alleges "personal and advertising injury" as defined by the Policies, which Sentinel denies, Exclusions p.(10) bar coverage under the Policies for the Underlying Action.

65.     Thus, Sentinel owes no defense or indemnity obligations to Defendants for any claims against them in the Underlying Action.

21

## COUNT VIII

### No Coverage for Gursten If He Is Not An Insured

66.     Sentinel incorporates and restates the allegations of paragraphs 1 through 65 above for this paragraph.

67.     Under the Insuring Agreement, coverage only extends to a person or organization that qualifies as an insured under the Policies.

68.     Michigan Auto Law is the named insured. Gursten is not a named insured.

69.     The definition of insured states that the "'executive officers' and directors" of Michigan Auto Law "are insureds, but only with respect to their duties as your officers or directors."

70.     To the extent that Gursten is not an "executive officer" or director of the named insured, Michigan Auto Law, within the meaning of the policy, he is not entitled to coverage.

71.     Thus, Sentinel owes no defense or indemnity obligations to Gursten to the extent he does not qualify as an insured entitled to coverage under the Policies.

22

## COUNT IX

### No Coverage For Exemplary Damages,
### Punitive Damages, and Injunctive Relief

72.     Sentinel incorporates and restates the allegations of paragraphs 1 through 71 above for this paragraph.

73.     The Policies provide that, subject to their terms and conditions, Sentinel "will pay those sums that the insured becomes legally obligated to pay as *damages* because of 'bodily injury,' 'property damage' or 'personal and advertising injury.'" (Emphasis added.)

74.     In the Underlying Action, CURE seeks exemplary damages, punitive damages, attorneys' fees and costs, and injunctive relief.

75.     Declaratory relief, injunctive relief, restitution, and punitive damages are not damages for "bodily injury," "property damage" or "personal and advertising injury."

76.     The Policies do not provide coverage for exemplary damages, punitive damages, attorneys' fees and costs, and injunctive relief.

77.     Thus, Sentinel owes no coverage obligations to Defendants for any of these claims in the Underlying Action.

## COUNT X

## No Umbrella Coverage

78.    Sentinel incorporates and restates the allegations of paragraphs 1 through 77 above for this paragraph.

79.    Certain Umbrella Liability coverage is provided pursuant to UMBRELLA LIABILITY PROVISIONS SX 80 02 04 05, modified in part by FOLLOWING FORM ENDORSEMENT – PERSONAL AND ADVERTISING INJURY SX 24 33 06 10 and EXCLUSION - LAWYERS PROFESSIONAL LIABILITY SX 21 72 04 01.

80.    The Umbrella Liability Coverage provides the following language, quoted in part:

**SECTION I - COVERAGES**

**INSURING AGREEMENTS**

**A. Umbrella Liability Insurance**

1.    We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance" or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies caused by an "occurrence". But, the amount we will pay as "damages" is limited as described in **Section IV – LIMITS OF INSURANCE**.

24

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Section II – INVESTIGATION, DEFENSE SETTLEMENT**.

2.   This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" only if:

a.   The "bodily injury", "property damage" or "personal and advertising injury" occurs during the "policy period" . . . .

(Ex. C, pg. 160; Ex. D, pg. 162)

81.   The Umbrella Liability Coverage states "Except as otherwise provided in this section or amended by endorsement, the words or phrases that appear in quotation marks within this policy shall follow the definitions of the applicable 'underlying insurance' policy." (Ex. C, pg. 171; Ex. D, pg. 173) The Umbrella Liability Coverage also contains the following definitions:

A.   "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

D.   "Damages" means a monetary award, monetary settlement or monetary judgment.  "Damages" includes prejudgment interest awarded against the "insured" on that part of the judgment we pay.

The following are not considered "damages" and are not covered by this policy:

1.      Fines, penalties, sanctions or taxes;

2.      Attorney's fees and costs associated with any non-monetary relief awarded against the "insured"; or

3.      Any monetary award, monetary settlement or monetary judgment for which insurance is prohibited by the law(s) applicable to the construction of this policy.

F.      "Occurrence" means

1.      With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions; and

2.      With respect to "personal and advertising injury", an offense described in one of the numbered subdivisions of that definition in the "underlying insurance".

I.      "Underlying Insurance" means the insurance policies listed in the Extension Schedule of Underlying Insurance Policies, including any renewals or replacements thereof which provide the underlying coverages and limits stated in the Schedule of Underlying Insurance Policies. . . .

(Ex. C, pg. 171-172; Ex. D, pg. 173-174)

82.     The Umbrella Liability Coverage is not impacted unless and until the applicable limits of liability or self-insured retentions for the underlying insurance has been properly exhausted. In addition, any obligations Sentinel might owe under the Umbrella Liability Coverage are subject to all other terms, conditions, endorsements and/or exclusions of

the Umbrella Liability Coverage. To date, the underlying limits of liability or self-insured retention have not been exhausted.

83.     With respect to CURE's lawsuit, in addition, as stated above with respect to the Business Liability Coverage, there is no coverage because CURE's lawsuit does not assert claims for potentially covered damages because of "bodily injury" or "property damage" caused by an "occurrence".  With respect to claims for "personal and advertising injury" caused by an offense that takes place during the policy period, the Umbrella Liability Coverage also contains the following additional exclusionary language:

**SECTION I - COVERAGES**

**B.    Exclusions**

This policy does not apply to:

4.      Personal and Advertising Injury

This policy does not apply to "personal and advertising injury".

EXCEPTION

This exclusion does not apply to the extent that coverage for such "personal and advertising injury" is provided by "underlying insurance", but in no event shall any "personal and advertising injury" coverage provided under this policy apply to any claim or "suit" to which "underlying insurance" does not apply. Any coverage

restored by this EXCEPTION applies only to the extent that such coverage provided by the "underlying insurance" is maintained having limits as set forth in the Schedule of Underlying Insurance Policies [as modified by SX 24 33 06 10].

(Ex. C, pg. 187; Ex. D, pg. 191)

84.     Exclusion B.4. precludes coverage for "personal and advertising injury." The exclusion contains an exception if the "underlying insurance" provides coverage. As previously discussed, Sentinel has determined that the Business Liability Coverage does not provide any potential coverage for the allegations of CURE's lawsuit constituting "personal and advertising injury." As a result, the exclusion applies to further bar coverage for CURE's lawsuit under the Umbrella Liability Coverage.

85.     The Umbrella Liability Coverage provides the following additional exclusionary language pursuant to SX 21 72 04 01, which would act to further limit or preclude coverage, quoted in part:

This insurance does not apply to '"bodily injury", "'property damage" or "personal and advertising injury'" arising out of the rendering of or failure to render professional legal services by a lawyer or by any other person performing such legal services.

(Ex. C, pg., 184; Ex. D, pg. 188)

320645250v.1
320645250v.1

86.    CURE's lawsuit alleges that the Defendants have engaged in a "war" with CURE in an effort to drive them out of business and continue profiting from claims brought under the Michigan no-fault statute. To the extent the Defendants' statements about CURE arising out of Defendants' rendering of professional legal services, coverage would be further precluded pursuant to this language.

87.    For all of the reasons stated above, Sentinel does not have a duty to defend the Defendants against the allegations of CURE's lawsuit under the Umbrella Liability Coverage.

As relief, Sentinel Insurance Company, Ltd. requests that this court enter judgment in its favor declaring that no coverage exists for Defendants for the claims in the Underlying Action under the Policies, and for such other relief as the court may deem just and proper.

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP

By: /s/ William S. Cook
    William S. Cook (P68934)
    17197 N. Laurel Park Drive, Ste. 201
    Livonia, Michigan 48152
    313.327.3100
    william.cook@wilsonselser.com
    *Attorneys for plaintiff*
    Dated: September 18, 2025

29